WALTER M. ELSWICK, Judge.
These four claims, heard together by agreement, are made upon a quantum meruit basis for work and services performed by the claimants, and for use of their four trucks in and about the construction of about five miles of road extending from the main state highway between Hamlin and West Hamlin in Lincoln county up Mud river toward the Logan county line. The work consisted of hauling stone from two to three miles for laying a rock base on this stretch of road. The work was being carried on under a commitment by the state road commission to sponsor for the works progress administration of the Federal Government a project commonly known in that vicinity as project No. 76 upper Mud river road, Lincoln county, West Virginia.
It appears from the evidence that each federal project must have a sponsor, which in all cases was the state, or a political subdivision such as a city, county or another federal agency. The state road commission on all state road projects was obligated to contribute from 20% to 25% of the total costs of the construction. The sponsor’s contribution in such instances was made by the use of equipment furnished by the state road commission, with operators, such as trucks, road graders, rollers, power shovels, etc. All labor on the project except the operators of the state road commission’s equipment, was furnished by the Federal Government. So long as the state road commission furnished sufficient equipment to equal the 20% to 25% as the case may be, of the total costs of the project for which it was obligated under its commitment, the Federal Government could then issue purchase orders for use of other or additional equipment such as trucks and operators from.its *282 fund known as “other funds.” But whenever the sponsor failed to keep a sufficient amount of equipment in use on the project to equal the proportion it was to supply it appears that the Federal Government could not issue purchase orders out of its “other funds” to supply the deficiency on the part of the sponsor. (Record pp. 45, 135, 164, 170, 175; Lunsford’s depositions pp. 18, 19).
It further appears from the evidence that the Federal Government regularly furnished the labor of about seventy-five men on this particular project (record pp. 168, 169). The costs of labor and equipment supplied by the Federal Government was compared with the sponsor’s contribution under its commitment from forms made out and signed by the sponsor’s agent, the project superintendent, the area engineer, and the timekeeper, the first mentioned being an employee of the state road commission, and the last three being employees of the Federal Government. These report forms were known as form 710, one copy of which was furnished to the sponsor, the state road commission, and another copy to the Federal Government. (Record p. 171).
It further appears from the evidence that the road being constructed was an important one running through the center of Lincoln county, from near its county seat to the Logan county line; that this part of the road was accepted when the rock base was laid and that the state road commission continued to sponsor other projects on the same road further on up the river and into Logan county, and surface treated all of the same. However, on or about the 27th day of August 1937, while the construction of the first five miles was in progress, certain officials of the works progress administration discovered that there was a marked shortage of equipment contributed by the road commission on the project, and an investigation was ordered. It was found that the Federal Government was spending more money for equipment than required, and that while the state road commission still operated certain equipment on the project, it was not sufficient to match the amount of .contribution under its commitment as sponsor of the road *283 work. The state road commission had taken the state trucks off the project in an emergency to take care of their regular maintenance of other roads (record p. 174) and the particular equipment needed at the time to make up the deficiency in its contribution was found to be trucks for hauling the base stone. The state road commission had only one truck on the project at the time of the investigation. The acting branch engineer of the works progress administration had received instructions that if it were impossible for the state road commission to furnish the additional trucks required, the work on this road should be discontinued until such time as proper equipment could be furnished. Under the commitment of the state road commission, if the work was closed down as much as three days, for lack of sufficient equipment, the project would be closed, and it would then be necessary to go through a lengthy procedure of making a new commitment as sponsor, which procedure usually required from three to four months to get such renewed sponsorship in operation. (Record p. 175).
The acting district engineer for the works progress administration, on August 29,1937 went to the project in Lincoln county and advised the superintendent of the project, and other officials in Lincoln county of the necessity of closing down the project unless additional trucks were supplied to comply with the sponsor’s commitment. The claimants, prior to this, had received purchase orders for the use of their trucks, from time to time, from the Federal Government. On certain occasions they had been instructed to proceed with their work prior to the time that they had received purchase orders, although it appears that the Federal Government had a rule not to pay for work on which a purchase order had not been issued prior to the time that it was performed (record pp. 28, 44, 66 and 147). While said engineer was in Lincoln county on this visit, it appears that Caudle Adkins, the county supervisor for the works progress administration, and Elza B. Adkins, its superintendent, contacted the claimants and secured their promises to use their trucks on the project a few days in order to hold the project intact, which they did, some beginning work during the last days in August 1937 and others beginning work in *284 September 1937. It appears that claimants received assurances from time to time by the works progress administration engineer and other members of its officials connected with the work that they would receive pay for their services. They continued on with their work with the use of their trucks until the 8th day of March 1938.
The road work progressed satisfactorily to all concerned, except the claimants, on the project until it was completed. It is not denied that each of the claimants performed the work for which they have filed claims, and that they have not been paid. In addition thereto these facts were fully established by the evidence. It also appears that the state road commission received credit on its commitment as sponsor of the project for the greater portion of these services performed by claimants. It also accepted the road and all benefits derived from the completion of the project. It appears from the reports made on form 710 showing contributions made by the sponsor as its proportionate part of its commitment that the claimants were contributing the work. It further appears from the evidence that they did not sign these reports or authorize them to be signed on their behalf, and that they were not aware of the fact that the state road commission was receiving. credit for their services on its sponsorship of the project. Since the works progress administration allowed the state road commission credit for the use of claimants’ trucks and operators as having been donated by them to the state road commission from the reports submitted by its agent as a part of its commitment as sponsor of the project, the Federal Government could not pay claimants for their services without in effect twice paying for the same.
It further appears from the evidence that the then maintenance superintendent of the state road commission in Lincoln county, who had charge of the works progress administration’s projects for the state in Lincoln county, knew of this shortage of trucks and knew that these claimants were performing the services for which they claim pay, without being paid by the Federal Government. (Record pp. 173, 174). He delegated the charge and supervision of the work on this project for the *285 state to one J. A. Coffman, who was the assistant county engineer for the state, and who acted as inspector and as sponsor’s agent. (Record p. 173, state’s exhibits 1 to 12, Lunsford’s depositions p. 27). Furthermore the state road commission furnished the right of way for the road, surveyed it, and operated other trucks, a grader, tractor, scarifier and air compressor on the project during the time claimants performed the services now considered. The said J. A. Coffman, as agent of the sponsor, the state road commission, certified the reports on said form 710 to the state road commission and works progress administration as having been contributed by claimants. He was not produced as a witness.
There is not any evidence emanating from claimants to support the contention of the state that these claimants authorized these reports to be signed by Coffman or by anyone for them, or that they otherwise donated their services. Such contention is emphatically denied by each of the claimants that they agreed to donate their services. It would seem, however, that claimants did contemplate a risk or gamble on the first few days work performed by assuming that they would soon thereafter receive purchase orders from the works progress administration. But there is no evidence in the record to show that they knew the state was receiving credit for their work, by the reports made on contributions by the state road commission’s agent, thus preventing the possibility of claimants receiving purchase orders from the Federal Government.
From all the evidence in the case it seems only just, fair and proper that the state, under all the circumstances in the case, should pay to the claimants a just portion of the sums of money as credit which it received under its commitment as sponsor of the road project. It appears from the evidence that all of the claiments are men of little or no financial worth, and that only one of them, namely, Dewey Adkins, actually resided on the road being constructed.
The record further shows that Dewey Adkins, the only claimant who resided on this road at the said time, did not perform any services with his truck from December 16, 1937 to March 8,1938, while Joel H. Adkins, who did not own any property in *286 Lincoln county and resided at the time in Logan county, performed the largest amount of services with his truck and operator during said time. It further appears that the work performed by all of claimants as claimed aggregated approximately the sum of $4,284.00. Fair minded men could not conclude from the evidence presented that they intended to donate to the state the full value of all of these services. Some of the claimants, at the time, were even hard pressed financially. We think it only proper that claimants be reimbursed by a reasonable sum for the amounts for which the state received credit from the works progress administration for their services.
From the evidence it appears that prior to this particular time during which claimants were not paid, that they received $1.75 per hour, or more, for the use of their trucks when they furnished the gas, oil and grease. It appears, however, that either the state (state’s exhibits 1 to 12) or the works progress administration furnished the gas, oil and grease to the claimants during the time claimants rendered the services for which they have not been paid. Neither they, nor anyone else apparently kept an account of how much gas, oil or grease was used by them and, hence, the court is not placed in position to calculate the same. However, it appears that the state received credit on its commitment by the use of these trucks on some reports made on form 710 for as much as $1.75 per hour, while on others it received credit for only $1.25 per hour. It appears that when the rate of $1.75 per hour was allowed as credit, that the state was also receiving credit for use of rather large quantities of gas, oil, and grease while only small quantities, if any, of the same were taken credit for when it received credit for only $1.25 per hour on the same trucks. This would certainly indicate that during the first months when the state received the credit for $1.75 per hour for each truck and operator that the state then furnished the gas, oil and grease and when the unit price per hour credited was reduced to $1.25 per hour on each truck and operator the Federal Government furnished gas, oil and grease. Therefore under all the circumstances, in justice and fairness, we are of the opinion that the claimants should be paid only on the services for which the state received credit under its sponsorship of the *287 project. After making a deduction for gas, oil and grease furnished them we are of the opinion from all the evidence and circumstances in the case that the sum of $1.25 per hour for truck and operator should be paid for said services for which the state received credit in its accounting with the Federal Government. All time for services performed by claimants for which the state did not obtain credit as shown by the record, should not be paid, and claims for such services are denied.
From the first report filed September 23, 1937 on said form 710 it appears that the state received credit by the use of claimants’ trucks for a total of 166 hours without segregating the hours performed by each claimant, and that from the record it appears that all the claimants’ trucks up to and including September 23, 1937, had been worked a total of 455 hours, distributed as follows: Adkins and Wilson 122 hours, Dewey Adkins 92 hours, G. B. Adkins 140 hours and Joel H. Adkins 101 hours. The credit received for which the state should be chargeable at the rate of $1.25 per hour for truck and operator for 166 hours amounted to $207.50 which should be distributed to each claimant on the proportion that the hours performed by each compared with the total of 455 hours performed by all during said time. Such percentage would amount to approximately .365 , which percentage calculated as aforesaid upon the number of hours allowed to each as aforesaid to September 23, 1937, based upon the number of hours performed by each would entitle each of the claimants to receive the following sums on said amount of $207.50, to-wit: To Adkins and Wilson, $55.64; to Dewey Adkins, $41.95; to G. B. Adkins, $63.85 and to Joel H. Adkins $46.06.
The total credit of hours for services performed by claimants received by the state road commission on its sponsorship for the period from September 24, 1937 to and including October 23,1937, as shown by two reports filed on form 710 October 23, 1937, was practically the same as the total number of hours worked, a credit being taken for a total of 423 hours while claimants’ trucks were used a total of 416 hours. During this period of time each of the claimants should receive pay on credit received by the state based upon the hours worked by each *288 truck at the rate of $1.25 per hour for truck and operator, as follows: To Adkins and Wilson 155 hours, or $193.75; to Dewey Adkins, 39 hours or $48.75; to G. B. Adkins, 91 hours or $113.75, and to Joel H. Adkins, 131 hours or $163.75.
The total credit of hours for services performed by claimants received by the state road commission on its said sponsorship for the period from October 24, 1937 to and including November 23, 1937, as shown by two reports filed on form 710 on November 8, 1937 and on November 23, 1937 respectively, for which claimant's should receive pay at the rate of $1.25 per hour for truck and operator, is, as follows: To Adkins and Wilson, 143 hours or $178.75; to Dewey Adkins, 153 hours or $191.25; to G. B. Adkins, 175 hours or $218.75; to Joel H. Adkins, 150 hours or $187.50.
The total credit of hours for services performed by claimants received by the state road commission on its said sponsorship for the period from November 24, 1937 to and including December 8, 1937, as shown by accounting report filed on form 710 December 8, 1937, aggregated 333 hour. The report does not segregate the number of hours of services performed by each claimant, but from the record it appears that each of the claimants rendered services aggregating said number of hours for which the state received credit and are entitled to be paid, at the rate of $1.25 per hour, as follows: Adkins and Wilson, 91 hours or $113.75; Dewey Adkins, 76 hours or $95.00; G. B. Adkins, 87 hours or $108.75; Joel H. Adkins, 79 hours or $98.75.
It appears from a report filed December 23, 1937 that the state received credit on its sponsorship for 56 hours of services performed by Joel H. Adkins and that he is entitled to be paid for same at the rate of $1.25 per hour for truck and operator which amounts to $70.00. Said report, without segregating the number of hours of services performed by each shows that the state received credit for 43 hours of services performed by Dewey and G. B. Adkins and from the record it appears that from December 9, 1937 to and ificluding December 23, 1937 said Dewey Adkins and G. B. Adkins performed said services and are entitled to pay for same at the rate of $1.25 per hour *289 for truck and operator, as follows: To Dewey Adkins, 28 hours or $35.00; to G, B. Adkins, 15 hours or $18.75.
It appears from a report filed January 8, 1938 that the. state received credit on its sponsorship for 51 hours of services performed by Joel H. Adkins and that he is entitled to he paid for same at the rate of $1.25 per hour for truck and operator or the sum of $63.75. Said report without segregating the number of hours of services performed by each claimant shows that the state received credit for 64 hours of services performed by “G. B. and Adkins” and from the record it appears that from December 23, 1937 to and including January 8, 1938, Dewey Adkins did not perform any services, but that Adkins and Wilson and G. B. Adkins did perform such services and are entitled to pay for same at the rate of $1.25 per hour for truck and operator, as follows: Adkins and Wilson, 61 hours or $76.25; G. B. Adkins, 3 hours or $3.75.
It appears from four reports filed on January 23, 1938, February 8, 1938, February 23, 1938 and March 8, 1938, respectively, that the state received credits on its contributions as sponsor of the project for a total of 369 hours of services performed by Adkins and Wilson, G. B. Adkins and Joel H. Adkins from January 9, 1938 to and including March 8, 1938, and it appears from the record that they performed said services and are entitled to receive pay for same at the rate of $1.25 per hour for truck and operator for said services, as follows: Adkins and Wilson, a total of 111 hours or $138.75; G. B. Adkins, a total of 123 hours or $153.75, and Joel H. Adkins, 135 hours or $168.75.
A majority of the court are therefore of the opinion to make awards to said claimants, as follows: To Adkins and Wilson, an award of seven hundred fifty-six dollars eighty-nine cents ($756.89); to Dewey Adkins, an award of four hundred eleven dollars ninety-five cents ($411.95); to G. B. Adkins, an award of six hundred eighty-one dollars thirty-five cents. ($681.35) ; to Joel H. Adkins, an award of seven hundred ninety-eight dollars fifty-six cents ($798.56), and orders are entered thereon accordingly.
Judge Bland dissents.